**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of John Galaske        }
       }
       }     Docket No. 111-6-03 Vtec
       }
       }

Decision and Order

Appellant-Applicant John Galaske (Sr.) appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Whitingham, denying his application to conduct a Vermont Inspection Station in an existing repair garage on his residential property.

Appellant appeared and represents himself; Interested parties Dana M. Friedman, Ralph L. Allen, Jr., Elizabeth J. Wheeler, and Reginald and Elaine Maynard appeared and represent themselves; and the Town of Whitingham is represented by Richard M. Gale, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant owns an approximately two-acre parcel of land in the Rural Residential zoning district of the Town of Whitingham, on a road known as Poverty Row. The Town of Whitingham adjoins the Massachusetts border. The road is one of the few relatively flat roads in town, and is widely used for walking, both with and without baby strollers, for roller skating, and for bicycling. Because it is flat, it is also a favorite road for young drivers who like to exceed the posted speed limit of 30 miles per hour.

Appellant=s property has 225 feet of frontage and contains an existing 262 ' x 482 ' house (with a footprint of 1285 square feet) and an existing 262 ' x 362 ' enclosed concrete-floor garage (with a footprint of 967 square feet) with an external 142 '- wide carport along the back wall of the garage. Both buildings are set back more than 200 feet from the road and the garage has a side setback of 45 feet from the neighboring property. The property meets the lot size and other dimensional requirements for the Rural Residential zoning district.

Appellant first applied in April of 2003 to operate a Vermont Inspection Station in the existing garage. This application was referred by the Zoning Administrator for site plan approval from the Planning Commission and a variance from the Zoning Board of Adjustment. The referral noted on it that it did not meet the requirements of ' 5.4[2] and 6.1 of the Zoning Regulation. Appellant appealed this decision to the Zoning Board of Adjustment.

On June 19, 2003, the chair of the ZBA wrote Appellant a letter stating that the ZBA had voted to deny Appellant= s application to operate a Vermont Inspection Station in the garage[1] on his residential property, for three reasons: that it is not an allowed use in the Rural Residential zoning district as listed in ' 6.1.1(a) through (f)[3]; that its operation would adversely affect the rural characteristics of the neighborhood; and that its operation would cause an increase in traffic in violation of ' 5.3(f).

If this letter was the only written evidence of the ZBA= s decision, it was defective for several reasons. First, it contained no findings at all, contrary to 24 V.S.A. ' 4470(a). Second, it stated that A you have 15 days to appeal this board= s decision to a higher authority@ when the time for

appeal to Environmental Court under the statute is actually 30 days. In addition, it is internally inconsistent, because ' 5.3(f) would not apply to the application unless it qualified as a ' 6.1.1(e)(1) > customary home industry or home occupation= which is a permitted use in the Rural Residential zoning district. In addition, the criterion apparently applied by the ZBA for its second reason for denial: that the inspection station would A adversely affect the rural characteristics of the neighborhood@ does not appear to be applicable to this proposal. That is, the ZBA could not properly have applied the conditional use standard, ' 3.4.2(b)(2), regarding the proposal= s effect on the character of the area, because the proposal for an inspection station does not fall within any conditional use category within those listed in ' 6.1.1(f). Further, the Whitingham Zoning Regulation does not appear to include any definition of > home occupation= nor to incorporate the use of that term by reference from the state statute. 24 V.S.A. ' 4406(3)[4].

In any event, Appellant both filed a timely appeal of that decision to this Court in the present appeal, and also on June 19, 2003 applied to operate an automotive repair shop in his existing garage.

Appellant=s subsequent application to operate an automotive repair shop in his existing garage was granted by the Zoning Administrator on July 5, 2003, presumably as a ' 6.1.1(e)(1) > customary home industry or home occupation,= which is a permitted use in the Rural Residential zoning district and therefore only requires Zoning Administrator approval, and does not require approval as a conditional use from the ZBA or site plan approval from the Planning Commission. That zoning permit contained no representations or conditions regarding the hours of operation or the number of customers per day or per week. No one appealed the issuance of this permit, and it became final. It cannot be challenged, directly or indirectly, in the present appeal. 24 V.S.A. ' 4472(d).

All that is before the Court in the present appeal, therefore, is whether Appellant may operate an inspection station in his existing garage, in connection with the operation of his permitted repair garage operation. Because he has received a permit for the repair garage and that permit was not appealed, we do not have any issues before the Court as to whether the operation of a repair garage should have been approved for this location, including any issues as to the relative size of the house as compared with the garage building, or any issues regarding whether a repair garage would adversely affect the character of the area. The only issues before the Court relate to whether Appellant may operate a Vermont Inspection Station in connection with the already-permitted repair garage. That is, we examine whether an inspection station would cause the already-permitted repair garage to violate any of the standards for home occupation/home industry under ' 5.3.

The operation of the inspection station within the garage involves only 25 square feet of floor space and the operation of a computer emissions tester. Other than those, the inspection operation involves the ordinary tools of a repair garage, including a floor jack, ball joint measurement instruments, and a headlight aiming set up. The inspection operation has the same relation to the repair garage as an x-ray or other diagnostic tool has to a doctor= s or dentist= s office: it will enable Appellant to determine if certain repairs are needed, but should not increase the number of customers per week for the repair garage itself. Appellant has the capacity to make appointments for inspections, if any inspections are to take place separately from the repair customers he is already authorized under his existing permit.

Because the property is located relatively close to the Massachusetts border, Appellant expects to perform inspections only for his local Vermont customers, and anticipates performing no more than 6 inspections per week, of which only about half will require additional repair work in order to pass inspection. Based on this anticipated volume, the addition of the inspection station will not increase the amount of traffic above that of the repair garage for inspections done on cars already there for other repair work. It could only potentially increase the amount of traffic above that of the repair garage for inspections done for customers who do not already have repair work scheduled,

and for customers who cannot leave their cars there after inspection has revealed the need for repair work. While this will not amount to more than approximately three to six vehicle trips per week, or approximately one additional vehicle per day, the test in the Zoning Regulation is that it not exceed the volume of traffic > normally expected= in the neighborhood. Therefore, to make sure that the addition of the inspection station will not increase the amount of traffic above that of the repair garage itself, Appellant will be required to make appointments only for two limited classes of customers: those customers seeking Vermont state inspections who are not already there for repair work, and any customers coming back on a subsequent trip for repairs as a result of the inspections. Appellant will be required to manage the timing of these of appointments so that the coming and going of traffic to the garage due to the inspection station will not exceed the volume normally expected in the neighborhood.

Appellant also must operate the already-permitted garage, including the inspection station, so that it continues to comply with all the subsections of ' 5.3. Section 5.3(f) only requires that the volume (that is, the amount) of traffic generated by the garage (whether due to the inspection station or not) will not exceed the volume of traffic normally expected in the neighborhood. However, ' 5.3(e) requires that objectionable circumstances such as noise, vibration and dust shall not be created by the home occupation or industry. Under ' 5.3(e), the driving of vehicles with loud mufflers up and down the road in connection with the home occupation is prohibited. On the other hand, such behavior with Appellant= s own vehicles is not addressed by ' 5.3(e) of the zoning ordinance, although it may be the subject of a private nuisance action.

Similarly, in Mr. Maynard= s post-hearing memorandum, he attached a copy of a deed asserted to be that of the Galaske property, containing restrictive covenants including that A there shall be no . . . service business of any sort, nature or description, no garage or filling station, so-called.@ This deed was not offered or admitted in evidence, and in any event has no effect on the zoning appeal before the Court. However, because all the participants other than the Town are unrepresented, we must note that if any party has a private right of action to enforce this deed covenant, that private right of action is not affected in any way by the present appeal.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant= s application to operate a Vermont Inspection Station in connection with the operation of his already-permitted repair garage, under ' 5.3(f) and ' 6.1.1(e)(1), is hereby approved. Appellant shall operate the garage, including the inspection station, so that it continues to comply with all the subsections of ' 5.3. In particular, to remain in compliance with ' 5.3(f), Appellant shall make appointments for customers seeking Vermont state inspections who are not already there for repair work, and shall make appointments for any customers coming back for repairs as a result of the inspections, and shall manage the volume and timing of appointments so that the coming and going of traffic to the garage due to the inspection station will not exceed the volume normally expected in the neighborhood.

Dated at Barre, Vermont, this 24th day of November, 2003.


_____
Merideth Wright
Environmental Judge

**Footnotes**

[1.] The size of the carport will not be considered with respect to either the inspection station application or the repair garage permit, as a §5.3 home occupation or home industry must be operated inside the dwelling or accessory building (§5.3(a)).

[2.] Section 5.4 pertains to landscaping and screening; the reference probably was meant to be to §5.3 (home occupations and home industry), as implied by the letter from the ZBA chair in evidence as Exhibit 2.

[3.] Section 6.1.1(f) is mistakenly numbered as a second subsection (e) on p. 23 of the printed copy of the ordinance in evidence as Exhibit 4; the parties agreed that it should properly be numbered as (f) and it was referred to as such on the record.

[4.] The state statute prohibits municipalities from infringing, in their zoning regulations, on the "right of any resident to use a minor portion of a dwelling for an occupation which is customary in residential areas and does not change the character thereof." It does not prescribe the extent to which municipalities may allow or regulate home occupations above that limited threshhold.